IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-02666-WYD

JO LYNN BACA,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

        Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-433.  For the reasons stated below, this case is affirmed.

I.    <u>BACKGROUND</u>

Plaintiff filed applications for benefits in November 2009 alleging disability beginning April 15, 2009, due to osteoporosis, arthritis, lupus, and high blood pressure. (Administrative Record ["AR"] 141-151, 187.)  Plaintiff was 41 years old on her alleged onset date.  (*Id.* 39.)  Plaintiff's claim was denied at the initial level.  (*Id.* 78-83.)  A hearing was held in September 2011 (*id.* 41-71), and the administrative law judge ["ALJ"] issued an unfavorable decision on November 4, 2011.  (*Id.* 27-40.)

In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through September 30,

2012, and that Plaintiff had not engaged in substantial gainful activity since April 15, 2009, the alleged onset date.  (AR 32.)  At steps two and three, the ALJ found that Plaintiff had severe impairments of coronary artery dissection, systemic lupus erythematosus ["SLE"][1], and major depressive disorder, but that such impairments did not meet or medically equal the severity of one of the listed impairments.  (*Id.* 32-33.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"], finding that she can "lift 10 pounds occasionally and less than 10 pounds frequently; occasionally stoop and courch, but not climb, crawl, kneel, or balance; sit for 45 minutes at a time without the opportunity to then stand; walk for no more than 15 minutes at a time without the opportunity to sit down; perform frequent handling and fingering; and not perform work at unprotected heights, involving exposure to hazardous machinery, or in unclean work environments as well as temperature and humidity extremes."  (AR at 34.)  He further found that Plaintiff was "limited to performing work involving no more than detailed instructions as a result of her mood disorder."  (*Id.*)  The ALJ found Plaintiff's testimony "as to the presence and severity of various impairments alleged, including pain, with resultant functional limitations, was exaggerated, not fully credible, and not supported to the degree alleged by a preponderance of the medical evidence and opinion in record and at hearing considered in its entirety."  (*Id.*)

At step four, the ALJ found that Plaintiff could not perform her past relevant work.  (AR 38-39.)  At step five, the ALJ retained a vocational expert who opined that an

---

[1] SLE is an autoimmune disease in which the body's immune system mistakenly attacks healthy tissue.  http://www.nlm.nih.gov/medlineplus/ency/article/000435.htm (last visited June 2, 2014).

individual with Plaintiff's RFC would be able to perform the job of telephone quotation clerk, with 1,800 jobs in Colorado and 94,000 jobs in the national economy.  (*Id.* 39.)[2] Based on this, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (*Id.* 40.) Accordingly, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from April 15, 2009, through the date of this decision . . . ." (*Id.*)

The Appeals Council denied Plaintiff's request for review (AR 8-14), making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely sought review.

Plaintiff argues that the ALJ's decision is so poorly written that it is not possible to determine and review the actual findings of fact on critical issues.  She also argues that the ALJ erred at step four as to her RFC by failing to apply the treating source rule and to properly address her ability to finger and handle and to meet work attendance standards.  Additionally, she contends that the ALJ erred in connection with the general educational development ["GED"], failed to apply her relevant "grid" regulation which suggested a finding of disabled, and that the ALJ's finding that a significant number of jobs existed that Plaintiff could perform was not supported by substantial evidence.

II.   ANALYSIS

     A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether

---

[2] The vocational expert also testified to representative jobs that the individual could perform at the light level, including production assembler and bench assembler.  (*Id.* 68-69.)  However, since the ALJ limited Plaintiff to sedentary work, these jobs were not material to his analysis.

the decision is supported by substantial evidence.  *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

    B.    Plaintiff's Arguments

        1.    RFC

In the case at hand, I agree with Plaintiff that the ALJ's RFC assessment was not a model of clarity.  However, I find that the ALJ's RFC assessment is supported by substantial evidence.

As to mental RFC, the ALJ found that Plaintiff is "limited to performing work involving no more than detailed instructions as a result of her mood disorder."  (AR 37) (citing Exs. 1F and 3F.)  While Plaintiff argues that this is not supported by the evidence, I note this finding appears to have been based on psychological consultant

Dr. Lewy's finding that Plaintiff "is able to understand, remember and carry out basic and detailed tasks at a moderate pace . . . ." (*Id.* 271, Ex. 3F.)  Thus, there was evidence that supported the finding.

I next address Plaintiff's argument that the ALJ erred in connection with the mental RFC by not following the treating source rule as to Jefferson Center for Mental Health ["JCMH"].  At the time of intake in February 2010, JCMH determined Plaintiff's global assessment of functioning "[GAF]" to be only 41 (AR. 275), which Plaintiff asserts means "unable to work."[3]  Plaintiff argues that the ALJ erred by not using that GAF score to determine that she lacked the mental RFC for any substantial gainful activity. She further argues that the ALJ simply ignored JCMH's opinion, and erred by instead relying on the "mental" consultant examination report in his decision.  (*Id.* 38, 343-45.)

Turning to my analysis, Plaintiff attended counseling sessions between February and April 2010, with David Johns, a professional counselor (LPC), at JCMH.  (Tr. 274-98.)  I find that he was the medical source whose opinion must be evaluated, not JCMH. *See* 20 C.F.R. § 404.1513.  As he is not an acceptable medical source, he is not a treating source.  SSR 06-03p, 2006 WL 2329939, at *1, 2.  However, his opinion is relevant to the severity of an impairment and how it impacts a claimant's ability to work. 20 C.F.R. § 404.1513(d).  Mr. Johns diagnosed Plaintiff with major depressive disorder, single episode.  (AR 274, 352.)  While Plaintiff argues that the ALJ ignored this

---

[3] GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10h Cir. 2012).  A GAF between 41–50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  *Id.*

treatment and diagnosis, this is not accurate as the ALJ referenced it both at step two of

the decision and in connection with the RFC discussion. (*Id.* at 33, 38.)  *See Martinez*

*v. Colvin*, No. 120cv-03066-LTB, 2014 WL 717192, at *5 (D. Colo. Feb. 25, 2014)

(finding no error with failure to assess the medical opinion of a non-acceptable medical

course where the ALJ referenced the records in the decision and, more importantly, "the

records do not contain any 'opinion' or assessment of Plaintiff's limitations, and her

diagnoses and act of prescribing medication does not indicate any specific mental

functioning related to Plaintiff's ability to work long term").

It is true, however, that the ALJ did not reference the GAF scores assigned to

Plaintiff during her treatment at JCMH (41 at intake and 50 in April 2010).  (AR 275,

288.)  Nonetheless, I agree with Defendant that, "[s]tanding alone, a low GAF score

does not necessarily indicate an impairment seriously interfering with a claimant's ability

to work."  *See Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004).  "The claimant's

impairment, for example, might lie solely within the social, rather than the occupational,

sphere."  *Id.*  Moreover, as noted by Judge Babcock of this Court, "the failure to discuss

a GAF alone is insufficient to reverse an ALJ's determination of non-disability."

*Martinez*, 2014 WL 717192 at *5 (citing cases).  Thus, I find no error as to this issue.

I also find no error in connection with the ALJ's reliance on consultative examiner

Dr. Milburn-Westfall's decision issued in May 2010 which concluded that Plaintiff's

depressive symptoms were mild and would not preclude employment.  (AR 345.)

Dr. Milburn-Westfall assessed a GAF score of 60-65, indicative of "'[s]ome mild

symptoms (e.g., depressed mood and mild insomnia), OR some difficulty in social,

occupational, or school functioning. . . but generally functioning pretty well, has some meaningful interpersonal relationships.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10h Cir. 2012) (quotation omitted).  While Plaintiff argues that it was unknown if Dr. Milburn-Westfall was given any instructions and that the Commissioner withheld medical records from him, including those from JCMH, she has cited no authority that this was required.  In light of the fact that Dr. Milburn-Westfall relied on his own examination of Plaintiff to support his opinion, I find this was not error.  As to Plaintiff's argument that there were subsequent treating source records which conflict with Dr. Milburn-Westfall's opinion, none of the records cited support this argument.  Finally, I disagree with Plaintiff that Dr. Milburn-Westfall stated conclusions but failed to connect them to any signs, symptoms or other medical findings.  (*See* Mental Status Examination, AR 344.)

I next address Plaintiff's argument that the ALJ erred by not including GED levels in the RFC.  I disagree, finding he was not required to do so.  GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Dictionary of Occupational Titles* ["DOT"]*,* vol. II, appc. C, pt. III, *available at* http://www.occupationalinfo.org/appendxc_1.html#III.  A claimant's RFC does not involve vocational factors such as education or skills obtained through employment.  Instead, the RFC determination addresses how an individual's impairments impact her ability to perform work-related activities.  *See Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished) ("The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related

activities. . . ."). As noted by another court, "the Social Security regulations do not utilize the GED Scale or any other readily quantifiable scale or metric to measure a claimant's ability to reason"; instead the regulations "state that 'nonexertional limitations' will be considered, such as 'difficulty maintaining attention or concentrating,' and 'difficulty understanding or remembering detailed instructions.'" *Baker v. Comm'r of Soc. Security*, No. 13-cv-01350-SAB, 2014 WL 3615497, at *7 (E.D. Cal. 2014). Thus, the failure to include GED levels within the RFC was not error.

Plaintiff also argues that the ALJ erred in finding that she could frequently finger and handle, a requirement of the telephone quotation clerk job. Thus, she asserts that while the ALJ's decision notes multiple allegations of extremely limited handling and fingering, he never clearly discloses what was believed and why, and what was found not credible and why not credible. Further, Plaintiff argues that the ALJ did not state how he reached the conclusion in the RFC that Plaintiff could frequently finger and handle. She contends there is no substantial evidence of record as to her handling or fingering ability, and that the ALJ should have developed the record on this issue through testing by a competent medical source. I reject this argument.

There is no evidence in the record as to her limited ability to handle or finger, other than Plaintiff's own subjective assertion. Both the medical expert Dr. Boyce and consultative examiner Dr. Carson found no restrictions on fingering and handling. (AR 53, 341.)[4] Further, the ALJ found that Plaintiff's reported symptoms were not fully

---

[4] While Plaintiff argues that the medical expert is not qualified, she cites no evidence in support of this assertion.

credible, and gave good reasons for this determination.  Plaintiff has not challenged the

reasons given by the ALJ to support his credibility determination, and I find it is

supported by substantial evidence.  Accordingly, the ALJ did not need to address in the

RFC symptoms which he found not to be credible.  *See Poppa v. Astrue*, 569 F.3d

1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help

the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are

inherently intertwined.").  Nonetheless, the ALJ limited Plaintiff to "frequent handling and

fingering" (AR 34), as opposed to not limiting Plaintiff's ability to handle and finger

at all.  Thus, he appeared to give some credit to Plaintiff's complaints.  Plaintiff has

failed to show error with this finding.

Plaintiff also asserts that the ALJ erred because Plaintiff lacks the RFC to meet

work attendance standards.  The VE opined that missing more than two days a month is

below the RFC required for any jobs arguably within Plaintiff's exertional and non-

exertional limitations.  (AR 70-71.)  Plaintiff argues that her various impairments prevent

her from meeting that standard, as she would be lucky to get to work 50% of the time.

(*Id.* 63-64.)  On those few days Plaintiff could get to work, she argues that she would

have blocks of time when she would be non-productive.  (*Id.* 56-58, 63, 356, 358-59.)

Again, however, the only evidence that Plaintiff would have attendance challenges when

working in a full-time job is her subjective assertion on this issue.  I find that the ALJ

gave sufficient reasons for finding Plaintiff's statements less than entirely credible, and it

was reasonable for him to discredit her statements that are not supported by objective

medical evidence.  Moreover, by virtue of making an RFC determination, the ALJ

implicitly found that Plaintiff retained the ability to perform work on a regular and

continuing basis.  *See* SSR 96-8p, 1996 WL 374184, at *2; *White v. Barnhart,* 287 F.3d

903, 906 n.2 (10th Cir. 2001).

> 2.   Step Five Findings

Plaintiff argues that the record is not developed as to whether she, as a person

with a limited education (completion of eleventh grade), could perform the only

sedentary job that the VE found Plaintiff could do—that of telephone quotation clerk.

That job involves, *inter alia,* "answer[ing] telephone calls from customers requesting

current stock quotations and provid[ing] information posed on electronic quote board".

DICOT 237.367-046, 1991 WL 672194.  It requires, among other things, a R-3

reasoning level.[5]  Again, I reject this argument, finding that the record did not need to be

further developed as to Plaintiff's ability to perform that job.

According to 20 C.F.R. § 1565(b)(3), limited education "means ability in

reasoning, arithmetic, and language skills, but not enough to allow a person with these

educational qualifications to do most of the more complex job duties needed in semi-

skilled or skilled jobs."  The telephone quotation clerk job is, however, an unskilled job,

and thus the regulation would not preclude that job for Plaintiff.  Moreover, the

vocational expert was specifically advised that Plaintiff had only eleven years of

education as part of the hypothetical question, and testified that Plaintiff could perform

the requirements of the telephone quotation clerk job.  The ALJ was entitled to rely upon

---

[5] This requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."

the vocational expert's testimony in reaching his conclusion that Plaintiff was not

disabled. *See Lopez v. Colvin*, No. 13-cv-00136-REB, 2014 WL 1056532, at *7

(D. Colo. March 18, 2014).

Related to the previous argument, Plaintiff also asserts that the ALJ erred at step

five by not applying the relevant grid regulation, which Plaintiff contends is 20 C.F.R.

§ 404, Subpart P, App. 2, Rule 201.00(c).  According to Plaintiff, this grid recognizes

that most persons of limited education who are restricted to sedentary work and who

have never done such work are disabled.  I find Plaintiff's characterization of this rule to

be inaccurate.  Rule 201.00 is premised on the fact that most sedentary occupations fall

within the skilled, semi-skilled, professional, administrative, technical, clerical, and

benchwork classifications.  It then states that an individual may not be able to engage in

substantial gainful activity where he or she is restricted to sedentary work "and lacks

special skills or experience relevant to most sedentary work (e.g., has a limited

education or less), and the individual's age, although not necessarily advanced, is a

factor which significantly limits vocational adaptability."  Rule 201.00(c).  This rule thus

only applies when the individual who is found to be limited to sedentary work lacks the

skills and experience required of the job because of his or her limited education and

where the claimant's age significantly limits vocational adaptability.

Here, because Plaintiff was found to have non-exertional impairments that

impacted the range of sedentary work she could do, the ALJ correctly used the Grid

Rules only as a framework and obtained vocational expert testimony to address any

erosion caused by these impairments.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487

(10th Cir. 1993); 20 C.F.R. §§ 404.1566(e).  The vocational expert opined that Plaintiff could do the unskilled position of telephone quotation clerk.  There were no findings that implicated Rule 201.00(c), as there is no evidence that the job required skills or education that Plaintiff lacked.

Moreover, the Commissioner notes that if Plaintiff did not have non-exertional limitations, Grid Rules 201.18 and 201.24 would direct a finding of not disabled because Plaintiff was a younger individual with an eleventh grade education (translating to "limited or less—at least literate and able to communicate in English"), who had no transferable skills.  20 C.F.R. pt. 404, subpt. P., appx. 2 §§ 201.18, 201.24.  Because of her non-exertional impairments, the ALJ correctly consulted a vocational expert to testify about whether Plaintiff's non-exertional limitations further eroded the unskilled sedentary occupational job base.  Thus, there was no error in not applying the Grid Rules.

Finally, Plaintiff argues that the Commissioner has not demonstrated that the telephone quotation clerk exists in significant numbers.  The record shows that there are 1,800 such jobs in Colorado and 94,000 jobs nationally (AR 39), and the ALJ found these numbers to be significant.  (*Id.* 40.)  Plaintiff argues that these numbers are so few as to be meaningless.  Again, I reject this argument.  The Tenth Circuit has "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number'"; instead, it has rejected such line-drawing and declined "to interpose [its] judgment for that of the ALJ." *Triamar v. Sullivan*, 966 F.2d 1326, 1330-31 (10th Cir. 1992).  It has indicated, however, that as few as 400 jobs locally and 70,000 national

jobs easily constitute a significant number.  *Prince v. Apfel*, No. 97-5176, 1998 WL

317525, at *3 (10th Cir. June 11, 1998); *see also Rogers v. Astrue*, 312 F. App'x 138,

142 (10th Cir. 2009) (unpublished) (finding that the ALJ could rely on position with

11,000 jobs nationally "as substantial evidence to support her finding of disability").

III.   CONCLUSION

Based upon the foregoing, it is

ORDERED that this case is **AFFIRMED**.

Dated:  March 24, 2015

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-13-